IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DOUGLAS M. JACKSON, #1771771 | § | |
| VS. | § | CIVIL ACTION NO. 6:14cv399 |
| ELLIOTT W. TURNER, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Douglas M. Jackson, a prisoner confined at the Michael Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on April 28, 2014. On July 21, 2014, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179, 182 (5th Cir. 1985), wherein the Plaintiff was given the opportunity to fully discuss the factual basis of his claims. Several prison officials were in attendance during the hearing, including Assistant Warden Larry Berger, Regional Grievance Officer Karen Norman and Nurse Kelly Maxwell. All witnesses testified under oath.

The lawsuit concerns allegations that the Defendants failed to protect the Plaintiff. He alleges that the Defendants were notified of a threat to his health and safety and that they denied him a life endangerment ("LID") investigation and a transfer to another unit. He testified that he had a fight with inmate Jerry Patterson a.k.a. Sherman on September 10, 2013. He asserted that he knocked out one

of Patterson's teeth. The Plaintiff noted that Patterson is a leader of the Blood gang. Patterson responded by telling him that he would have members of the gang kill him. The Plaintiff responded by reporting the threat to Sgt. Turner and Officer Foreman. He asked them to conduct a LID investigation. The Plaintiff noted that he has been diagnosed with schizophrenia. Since he is a mental patient, the officers contacted the psychiatric department regarding his request for a LID investigation. The Plaintiff testified that they were told that he was simply trying to get off of the unit and to send him back to his housing area. The officers eventually told the Plaintiff that he would have to wait until the following day for a LID investigation to be conducted. On the following day, however, he was attacked by twenty members of the Blood gang before the LID investigation was begun. The Plaintiff testified that the gang members pulled him out of the view of security personnel. They stomped on his leg and kicked him in the abdomen. He asserted that x-rays subsequently revealed that he suffered cracked ribs during the assault. The Plaintiff testified that he sued Officer Burton because he heard other inmates making threats on September 10, 2013, but Burton did nothing to protect him.

The Plaintiff testified that he is suing Michael Unit Chief of Classification Sandlin for denying him a transfer to another unit. He noted that Assistant Warden Dewberry had approved his request for a transfer, but Sandlin rejected it.

The Plaintiff testified that he is suing Officer Durham because of an incident that occurred on January 9, 2014. Durham tried to make him accept a housing assignment with an inmate who had assaulted him. The Plaintiff refused the housing assignment, and Officer Durham responded by initiating disciplinary proceedings against him. The Plaintiff, however, showed his grievance records to a ranking officer, who had him reassigned to a different cell.

Nurse Maxwell testified under oath from the Plaintiff's original medical records. He stated that the records do not have any entries for September 11, 2013. On September 12, 2013, the Plaintiff was

brought to the infirmary for a prehearing detention physical. Medical personnel did not observe any irregularities. Everything was normal. Maxwell testified that there is nothing in the medical records to support the Plaintiff's claim that he was assaulted.

The Plaintiff gave the Court permission to review his prison records. The records are somewhat extensive. Prison records reveal that numerous offender protection investigations ("OPI") have been conducted regarding his claims. It is noted that the terminology LID and OPI are used interchangeably. Sgt. Turner submitted a statement specifying that the Plaintiff approached him and told him that his life was in danger. The Plaintiff was placed in a holding cage while the claim was investigated. Sgt. Turner specified that he called Lt. Marshall, who issued instructions to take the Plaintiff to Eleven Building. Lt. Marshall issued a report on September 13, 2013. He noted that the Plaintiff reported that he had a fight with his cellmate, Jerry Patterson, on the evening of September 11, 2013. The Plaintiff told security personnel that he had not been injured. The Plaintiff went on to state that he was approached by several inmates right after lunch on September 12, 2013. The Plaintiff reported that they told him that "he needed to catch out and leave the building." He was unable to identify any of the inmates who approached him. Inmate Patterson was interviewed. He denied all of the Plaintiff's allegations. He specifically asserted that he had not touched the Plaintiff. He added that he and the Plaintiff were "not compatible." Several other inmates living in the area were interviewed. They all denied hearing or witnessing any altercation involving the Plaintiff and inmate Patterson. Lt. Marshall concluded that the Plaintiff's allegations could not be substantiated. He forwarded a report with his findings to the Unit Classification Committee ("UCC"). On September 19, 2013, the UCC found that there was no evidence to substantiate the Plaintiff's allegations.

The UCC completed another review on September 26, 2013. The UCC was provided a report that indicated that the Plaintiff had repeatedly expressed a desire to be transferred off of the Michael

Unit, and "unwittingly, his actions have made him a target of Patterson and other offenders, and his removal from the Michael Unit General Population appears to be warranted as a measure to insure his safety." Warden Dewberry, as the head of the UCC, recommended a unit transfer. In support of the recommendation, Warden Dewberry observed that the Plaintiff had a strong potential to be a victim of assault from a disruptive group. The State Classification Committee in Huntsville rejected the recommendation on November 5, 2013. Several other OPI investigations were conducted, and the UCC rejected the Plaintiff's claims as unsubstantiated on November 13, 2013, and January 16, 2014.

A review of the medical records reveal that there is no indication that the Plaintiff was observed with any injuries during the month of September 2013. On November 10, 2013, he reported to a nurse that he was injured "days ago" and that he thought a rib may have been broken on his left side. The nurse referred him to a medical provider concerning his left rib cage. On December 9, 2013, x-rays revealed that the Plaintiff's "lungs [were] clear without effusion or focal consolidation. Calcified granulomas/lymph nodes overlie both hila." On February 4, 2014, Physicians Assistant Virginia Schafer observed that his lower two ribs on the left side were tender. Her assessment was rib pain. On February 10, 2014, new x-rays revealed no irregularities.

Mental health records reveal that the Plaintiff's schizoaffective disorder was first observed on April 24, 2013. He was discharged from the Skyview psychiatric facility and transferred to the Michael Unit on June 14, 2013. An entry, dated September 4, 2013, documented that the Plaintiff reported an increase in depression, auditory hallucinations, as well as, paranoia. He reported that the "voices" were getting worse. The drugs being provided to him included Thorazine and Zoloft. A "late entry" was dated September 12, 2013. The Plaintiff was seen in a holding cell on Eight Building. He reported that his cellmate had been threatening him. Mental health personnel advised the Plaintiff that they did not have anything to do with cell moves and that the lieutenant was aware of the problem.

Discussion and Analysis

The Eighth Amendment affords prisoners protection against injury at the hands of other inmates. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official may avoid liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. Courts must employ a subjective standard, as opposed to an objective standard, in determining whether a prison official acted with deliberate indifference. *Id.* at 842-43; *Gordon v. Pettiford*, 312 Fed. Appx. 595, 596 (5th Cir. 2009).

In the present case, the facts as alleged by the Plaintiff and supplemented by the records reveal that officials were responsive to his complaints concerning his safety. The Plaintiff asserts that he had a fight with his cellmate during the evening of September 10, 2013. He reported the altercation to Sgt. Turner and Officer Foreman. They told him that the actual OPI investigation would have to wait until the following day. Nonetheless, the Plaintiff was placed in a holding cell. The psychiatric department was contacted, and Sgt. Turner called Lt. Marshall for instructions. Lt. Marshall conducted the actual investigation. The investigation documented the Plaintiff's claim that he had been approached by several inmates after lunch, and the Plaintiff reported that they told him that "he needed to catch out

and leave the building." Inmate Patterson was interviewed, and he denied the Plaintiff's allegations, although he supported the Plaintiff's claim that they were "not compatible." There was no evidence at that time that the Plaintiff had been injured. Lt. Marshall concluded that the Plaintiff's claim that his life was in danger could not be substantiated; thus, the UCC rejected the Plaintiff's claims. Overall, prison personnel were responsive to the Plaintiff's claims. His claims were investigated, but they could not be substantiated. Their actions were reasonable in light of the evidence presented to them. The facts as alleged and supplemented by the record do not support an inference of deliberate indifference. The Plaintiff does not have a basis for a potentially meritorious civil rights claim just because he disagrees with the classification decision made by officials. *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). The facts as alleged do not show that officials acted in ways that "evince obduracy and wantonness," as required to support a claim of deliberate indifference. *Parker v. Currie*, 359 F. App'x 488, 490 (5th Cir. 2010) (internal quotation marks and citation omitted).

Nonetheless, when the Plaintiff persisted with his claims, prison officials began additional OPI investigations. On September 26, 2013, Warden Dewberry recommended a unit transfer because the investigations may "unwittingly . . . have made him a target of Patterson and others." The State Classification Committee, as opposed to Michael Unit Chief of Classification Sandlin, rejected Warden Dewberry's recommendation. Overall, Michael Unit personnel investigated every claim made by the Plaintiff that his life was in danger. Michael Unit personnel acted reasonably in investigating his claims, but none of the investigations were able to substantiate the Plaintiff's claim that his life actually was in danger. The transfer recommendation was made as a precautionary matter. The facts as alleged and developed do not show that any of the Defendants, who are all Michael Unit employees, knew of and disregarded an excessive risk to the Plaintiff's health or safety.

The facts as alleged and developed fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The failure to protect claim lacks merit.

One final claim concerns Officer Garvernet Durham. She initiated disciplinary proceedings against the Plaintiff when he refused a new housing assignment. However, when all of the facts were presented to the ranking officer, the Plaintiff was reassigned to another cell. These facts do not give rise to an inference of deliberate indifference to the Plaintiff's safety. His claims were investigated and resolved in his favor. The actions taken by officials were reasonable under the circumstances. This claim is somewhat different from the previous claims because it includes an element of a complaint about a disciplinary matter. The Supreme Court placed severe limitations on complaints about disciplinary cases in *Sandin v. Conner*, 515 U.S. 472 (1995). The Court held that the inmate's discipline in segregated confinement did not present the type of atypical, significant deprivation necessary to trigger the protection of the Constitution. *Id.* at 486. The Fifth Circuit subsequently held that a lawsuit complaining about a disciplinary case triggers the protection of the Constitution only if an inmate lost good time and he was eligible for release on mandatory supervision. *Madison v. Parker*, 104 F.3d 765, 769 (5th Cir. 1997). In the present case, the Plaintiff's disciplinary case never went that far. It was dropped early in the proceedings. He was never actually disciplined. Consequently, the Plaintiff's complaint against Officer Durham fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

One last matter that should be discussed concerns harm. Fundamental to any civil rights case, a plaintiff must show an injury as a prerequisite to recovery under § 1983. *McCord v. Maggio*, 927 F.2d 844, 849 (5th Cir. 1991). Congress has specified that "[n]o federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury

suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). *See also Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). In evaluating the Plaintiff's claims for purposes of this Memorandum, the Court accepts his claim that his ribs were injured. Nonetheless, his injuries were not documented in September 2013. Instead, his complaints about his ribs were documented in the medical records for the first time in November 2013. Medical personnel fully developed his complaints, but x-rays did not confirm any injuries. The Plaintiff is placed on notice that his lawsuit cannot succeed in the absence of harm. It is accordingly

**ORDERED** that the lawsuit is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). All motions not previously ruled on are **DENIED**.

**So ORDERED and SIGNED this 29th day of July, 2014.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE